**ALASKA PUBLIC EMPLOYEES ASSOCIATION, Appellant,**

v.

**CITY OF FAIRBANKS, Appellee.**

No. S–2181.

Supreme Court of Alaska.

April 29, 1988.

John B. Gaguine, General Counsel, Juneau, for appellant.

James M. Mullen, Deputy City Atty., Fairbanks, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

■ This appeal presents a single question: whether the compulsory binding arbitration right provided in AS 23.40.200(b) applies to *all* employees in a particular bargaining unit, when some of the employees belong to classes not expressly given the statutory right. We hold that the statute does not provide arbitration rights for all employees in a mixed bargaining unit; therefore, we affirm.

Fairbanks is a municipality covered by the Alaska Public Employment Relations Act, AS 23.40.070–.260. By decision of the state agency which administers the Act,[1] the city was divided into several bargaining units, and city employees were able to decide who would represent them in contract negotiations. The APEA represents one of these bargaining units; its group comprises about fifty employees, including supervisors in the police and fire departments, engineers, building inspectors, and general support staff personnel.

Fairbanks and the APEA began negotiating a collective bargaining agreement in April, 1985. When the two sides reached an impasse in September of that year, the APEA sought arbitration for its entire unit. The city agreed to arbitration, but only for those APEA employees with whom it believed it was statutorily required to arbitrate. Thus, the APEA filed an Accusation of Unfair Labor Practice against the city, alleging that it was bad faith for the city to refuse to arbitrate with *all* APEA members.[2] The State, Department of Labor, Labor Relations Agency dismissed the APEA's accusation, ruling that Fairbanks had no statutory obligation to arbitrate with all APEA employees, and therefore it was not bad faith to refuse to do so. On appeal to the superior court, Judge Blair affirmed that ruling.

The resolution of this case turns on the interpretation of AS 23.40.200.[3] That statute divides public employees into three classes. In order to safeguard the public welfare, it prohibits certain employees from going on strike. Class (a)(1) employees, such as police, fire, jail and hospital personnel, may never strike because their services are continuously necessary for the public's protection. AS 23.40.200(a)(1), (b).

---

1. That agency is the Department of Labor, Labor Relations Agency (DOLLRA).

2. Fairbanks also filed an accusation alleging bad faith by APEA, but it was later withdrawn.

3. Because this question is one of statutory interpretation, we apply the "independent judgment" standard of review. *Wien Air Alaska v. Department of Revenue,* 647 P.2d 1087, 1090 (Alaska 1982).

Class (a)(2) employees, such as public utility, snow removal, and public school employees, may strike under limited circumstances, AS 23.40.200(a)(2), (c), and class (a)(3) employees, all others, may strike whenever they vote to do so. AS 23.40.200(a)(3), (d). Subsection (b) of the statute, which contains the strike prohibition as to class (a)(1) employees, specifically provides that

> [i]f an impasse or deadlock is reached in collective bargaining between the public employer and *employees in this class, ... the parties shall submit to arbitration....*

AS 23.40.200(b) (emphasis added). So, although the legislature has taken from the (a)(1) employees their right to strike, it has given, as a *quid pro quo*, the statutory right to compulsory binding arbitration. Since the class (a)(2) and (a)(3) employees have the right to strike, they do not have this arbitration right.[4]

The APEA comprises employees from all three classes; some members are forbidden from striking, while others are not. The APEA's position is that, in such a "mixed unit" situation, it does not make sense to limit the arbitration right to only the (a)(1) members; where some members of a unit have arbitration rights, the statute should be construed as granting arbitration to the entire unit. They argue that a "literal" reading of the statute would lead to results violative of public policy, because it could result in two different contracts for one bargaining unit: one for the (a)(1) employees who arbitrated, and one for the (a)(2) and (a)(3) employees who went on strike. The city's position, with which the Labor Relations Agency and the superior court agreed, is that the statute clearly and unambiguously sets forth employee classifications and rights, and class (a)(2) and (a)(3) employees "should not be entitled to binding arbitration simply because they happen to be in a bargaining unit with" (a)(1) employees.

■ The interpretation urged by the APEA simply does not comport with any reasonable reading of the statute. Alaska Statute 23.40.200 unambiguously extends the right to compulsory arbitration *only* to those employees who are forbidden from striking. We have rejected a mechanical application of the plain meaning rule[5] in this state, and have instead adopted a sliding scale approach towards statutory interpretation. *State v. Alex*, 646 P.2d 203, 208–09 n. 4 (Alaska 1982); *see also North Slope Borough v. Sohio Petroleum*, 585 P.2d 534, 540 n. 7 (Alaska 1978). However, if a statute's legislative history does not demonstrate that there is an ambiguity, then "we must adhere to the general rule that if the language of a statute is unambiguous and expresses the intention of the legislature, it should not be modified or extended by judicial construction." *State, Department of Natural Resources v. City of Haines*, 627 P.2d 1047, 1049 n. 6 (Alaska 1981). Under this analysis, the APEA's proposed interpretation fails. Not only is the wording of AS 23.40.200 facially clear and unambiguous, but, as APEA admits, there is no available legislative history of this statute which will support its view. Since there is nothing indicating ambiguity, we will enforce the statute in accordance with its clearly intended meaning.

Under the only reasonable reading of AS 23.40.200, Fairbanks is required to arbitrate only with class (a)(1) employees; only "employees in this class" have the arbitration right. AS 23.40.200(b). The statute cannot be read to grant arbitration rights

---

4. Actually, striking class (a)(2) employees may be ordered by superior court injunction to return to work if the public's health, safety, or welfare is threatened by the strike. AS 23.40.200(c). If there is still a deadlock after such an injunction, "the parties shall submit to arbitration." *Id.* Thus, the arbitration right is only given as a trade-off when the right to strike is taken away. For purposes of this appeal, class (a)(2) and (a)(3) employees can be treated the same.

5. That rule provides that if a statute's meaning is plain, it should be enforced as it reads without judicial modification or construction. *Municipality of Anchorage v. Sisters of Providence in Washington*, 628 P.2d 22, 27 (Alaska 1981); *Horowitz v. Alaska Bar Ass'n*, 609 P.2d 39, 41 (Alaska 1980).

to the class (a)(2) and (a)(3) employees just because other members of the APEA have the right. The meaning of the statute is not altered simply because of the way these employees have formed their bargaining unit.[6]

Fairbanks did not, therefore, engage in any unfair labor practice when it refused to arbitrate with *all* APEA members. Alaska

Statute 23.40.200 does not require it to arbitrate with any members except the class (a)(1) employees. We **AFFIRM.**

---

**6.** The arguments advanced by the APEA, that the statute "just leads to too many problems," is more properly a matter for the legislature, not this court. *See B.J.B.A. v. M.J.B.,* 620 P.2d 652, 655 (Alaska 1980); *State v. Campbell,* 536 P.2d 105, 111 (Alaska 1975) (constitutionally decreed separation of powers prohibits the court from redrafting legislation).