Jason P. LeFEVER, Petitioner,

v.

STATE of Alaska, Respondent.

No. A–4999.

Court of Appeals of Alaska.

July 22, 1994.

Rehearing Denied Aug. 24, 1994.

Gina M. Tabachki, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for petitioner.

Jacquelyn L. Parris, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for respondent.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

COATS, Judge.

The district court, sitting without a jury, convicted Jason P. LeFever of unlawful evasion in the first degree, a class A misdemeanor. AS 11.56.340. LeFever appealed his conviction to the superior court, contending that the district court should have granted his motion for acquittal on the ground that AS 11.56.340 does not apply to evasion of detention for an adjudication of juvenile delinquency. The superior court affirmed the conviction. This court granted LeFever's petition for hearing, and we now affirm.

On June 16, 1992, Courtney Rhea, the primary youth counselor for LeFever during his treatment at the Fairbanks Youth Facility, sent LeFever onto the grounds of the facility to work with the maintenance staff under minimal supervision. About two hours later, Rhea noticed that LeFever was late in returning and searched the grounds to find him, but LeFever had departed the facility without authorization to do so. LeFever did not return until his juvenile probation officer went to Seattle to retrieve him the following month. Defense counsel stipulated at trial that LeFever had been "in official detention at the time of these alleged incidents and that he was there based on children's proceedings and adjudications for what would have been felonies had he been an adult." Defense counsel did not stipulate that LeFever had been convicted of any felonies. LeFever had turned 18 years old before June 16, 1992; the state therefore charged him as

an adult with unlawful evasion. *See Henson v. State,* 576 P.2d 1352 (Alaska 1978).

At the close of this evidence at trial, LeFever moved for a judgment of acquittal on the ground that the state had not proved one of the elements of first-degree unlawful evasion: that LeFever had left the facility "while charged with or convicted of a felony." AS 11.56.340(a). LeFever argued that his adjudication as a delinquent minor had not constituted a conviction of any crime, whether felony or misdemeanor. District Court Judge Jane F. Kauvar denied the motion, noting that LeFever had apparently been "charged with" felonies in juvenile court prior to the adjudication of delinquency. Judge Kauvar then found that LeFever was guilty of unlawful evasion and sentenced LeFever to ten suspended days of imprisonment with probation of one year.

LeFever appealed his conviction to the superior court. Superior Court Judge Ralph R. Beistline affirmed the conviction, commenting: "Certainly LeFever's arguments are academically appealing; however, they would effectively eliminate any remedy there might be for juveniles who depart the Youth Facility without permission." LeFever petitioned this court for a hearing of the superior court's decision.

Alaska Statute 11.56.340(a) provides as follows:

> A person commits the crime of unlawful evasion in the first degree if, *while charged with or convicted of a felony,*
>
> (1) the person fails to return to official detention within the time authorized following temporary leave granted for a specific purpose or limited period, including leave granted under AS 33.30.181; or
>
> (2) while on furlough under AS 33.30.101—33.30.131 the person fails to return to the place of confinement or residence within the time authorized by those having direct supervision.

(Emphasis added.)

LeFever's position is that a person who has been adjudicated as a juvenile cannot

commit first-degree unlawful evasion because such a person is not "charged with or convicted of a felony." [1] LeFever relies on the fact that proceedings for juvenile delinquency are distinct from adult criminal proceedings. LeFever particularly relies on AS 47.-10.080(g), which provides:

> No adjudication under this chapter upon the status of a child may operate to impose any of the civil disabilities ordinarily imposed by *conviction* upon a criminal charge, nor may a minor afterward be considered a criminal by the adjudication, *nor may the adjudication be afterward deemed a conviction, nor may a minor be charged with or convicted of a crime in a court, except as provided in this chapter.* The commitment and placement of a child and evidence given in the court are not admissible as evidence against the minor in a subsequent case or proceedings in any other court, nor does the commitment and placement or evidence operate to disqualify a minor in a future civil service examination or appointment in the state.

(Emphasis added.) Alaska Statute 47.10.080, which deals with judgments and orders of the juvenile court upon finding that a minor is delinquent, nowhere uses the terms "conviction" or "convicted" except in the language emphasized above. Other than as quoted above, and in the statutes providing for waiver of juvenile jurisdiction and prosecution of minors as adults, the terms "charged" and "convicted" do not appear anywhere in the chapter devoted to delinquent minors. Therefore, LeFever contends, under the plain language of AS 11.56.340(a) (and AS 11.56.350(a)), a person who is in official detention as a result of an adjudication of delinquency cannot commit unlawful evasion in any degree because such a person has not been "charged with or convicted of" either a felony or a misdemeanor.

However, Alaska does not adhere to a "plain meaning rule" of statutory interpretation that disregards any consideration of legislative purpose or intent. *Wylie v.*

---

1. Nor, if LeFever is correct, could a person who has been adjudicated as a juvenile commit second-degree unlawful evasion, since such a person is not "charged with or convicted of a misdemeanor." AS 11.56.350(a).

*State,* 797 P.2d 651, 657 (Alaska App.1990). Instead, we consider a statute's meaning by applying a "sliding scale" such that, the plainer the statutory language, the more convincing the evidence of a contrary legislative purpose or intent must be. *Anchorage Sch. Dist. v. Hale,* 857 P.2d 1186, 1189 (Alaska 1993); *Millman v. State,* 841 P.2d 190, 194 (Alaska App.1992); *Wylie,* 797 P.2d at 657. Even though we generally construe ambiguous criminal statutes in favor of the defendant, we must avoid construing a statute so as to yield patently absurd results or to defeat the obvious legislative purpose of the statute. *Lipscomb v. State,* 869 P.2d 166, 168 (Alaska App.1994); *State v. Lowrence,* 858 P.2d 635, 638 (Alaska App.1993); *Williams v. State,* 853 P.2d 537, 538 (Alaska App.1993); *Thiessen v. State,* 844 P.2d 1137, 1139 (Alaska App.1993); *Briggs v. Donnelly,* 828 P.2d 1207, 1208–09 (Alaska App.1992). In this case, we conclude that the legislature intended adjudicated delinquents to be subject to the unlawful evasion statutes. The evidence of this intent outweighs LeFever's "plain meaning" construction, which would result in the unlawful evasion statutes being inapplicable to adjudicated delinquents.[2]

LeFever does not dispute that he failed to return to "official detention" under AS 11.56.-340(a)(1). "Official detention," as defined in AS 11.81.900(a)(35), specifically includes "actual or constructive restraint under an order of a court in a criminal or juvenile proceeding." The term "official detention" occurs in each of the escape and unlawful evasion statutes (AS 11.56.300–.350), as well as the statute prohibiting permitting an escape (AS 11.-

56.370).[3] It therefore appears that each of the escape and unlawful evasion statutes is potentially applicable to those who escape from or evade detention in a juvenile facility.

LeFever concedes that adjudicated delinquents can be in "official detention" and that certain provisions of the escape statutes—the provisions that do not mention felonies or misdemeanors—can apply to adjudicated delinquents. In particular, LeFever grants that an adjudicated delinquent can be convicted of first-degree or second-degree escape for escaping by means of a deadly or defensive weapon, while possessing a firearm, or from a correctional facility. AS 11.-56.300; AS 11.56.310(a)(1)(A), (C). However, LeFever argues that none of the other escape provisions and none of the unlawful evasion statutes apply to adjudicated delinquents.

Alaska Statutes 11.56.310–.330, which define the offenses of escape in the second through fourth degrees, refer to detention or confinement "for" a felony or misdemeanor. In *State v. Stores,* 816 P.2d 206, 210–11 (Alaska App.1991), this court held that the phrase "for a felony" as used in AS 11.56.-310(a)(1)(B) meant "in reference to" a felony and that the escape statute was therefore broad enough to apply "whether the person is detained for a felony that has not yet been charged, or a felony that has been formally charged or for a felony on which a conviction has been entered."[4] We went on to note that the legislature intended the phrase "for a felony" to clarify, rather than alter, the

---

2. *In re Wilson,* 367 Pa.Super. 321, 532 A.2d 1167 (1987), *appeal denied,* 520 Pa. 594, 598, 552 A.2d 249, 252 (1988), is therefore distinguishable. The Pennsylvania court construed an aggravated escape provision and held that it did not apply to adjudicated delinquents. However, the court recognized that the defendant remained guilty of a lesser degree of escape. 532 A.2d at 1168 & n. 2. The court did not hold, and the statute could not have been read to provide, that adjudicated delinquents could not be punished under the statute at all. *See also Renfroe v. State,* 161 Ind.App. 519, 316 N.E.2d 405 (1974).

3. The term also appears in the core statute for the offenses of promoting contraband (AS 11.56.-380), the statute describing justified use of force by guards (AS 11.81.410), and the statute de-

scribing credit toward a sentence of imprisonment (AS 12.55.025(c)).

4. In *Stores,* the defendant, who had originally been convicted of a felony and later released on parole, escaped from a police officer who arrested him on a warrant for a parole violation. *Id.* at 207–08. This court held that the escape statute applied because the defendant had escaped from official detention "for" the original felony of which he had been convicted. *See also Burt v. State,* 823 P.2d 14, 15 (Alaska App.1991) (holding that bail violation statute requiring that offender be released "in connection with a charge of felony" applied to probationer who had originally been convicted of felony when probationer violated bail conditions while probation revocation petition pending).

scope of the previous language of the escape statutes ("on a charge of a felony") and that the latter phrase in turn included "for a felony conviction" even though the legislature had omitted explicit reference to convictions in a previous amendment. *Id.* at 211 n. 4. In addition, we rejected the argument that, "because the four degrees of escape are classified by the type of underlying crime [felony or misdemeanor], the legislature intended to distinguish parole and probation arrests by excluding them from the statute," and held instead: "[T]he apparent purpose of the classification is simply to establish the appropriate degree of escape to be charged and the period of incarceration to be imposed." *Id.* at 212 n. 5.

By similar reasoning, it appears that the language "for a felony" and "for a misdemeanor" as used in the escape and unlawful evasion statutes alike is meant to divide the universe of persons who are in "official detention" into two categories, by seriousness of their underlying conduct, and is not meant to exclude adjudicated delinquents from the statutes. A contrary interpretation could lead to particularly anomalous results if applied to AS 11.81.410. Alaska Statute 11.81.-410(b) generally authorizes guards or peace officers to use deadly force when necessary to prevent an escape of a prisoner from a correctional facility. However, AS 11.81.-410(c) limits the use of deadly force by providing that a guard may not use deadly force against an escaping prisoner if the guard knows that the prisoner was "under official detention ... on a charge of a misdemeanor" and does not believe the prisoner has a firearm. If the phrase "on a charge of a misdemeanor" excluded juveniles who had been adjudicated delinquent, it would follow that guards could use deadly force against adjudicated delinquents escaping official detention regardless of the seriousness of their underlying conduct.

We recognize that the language of the unlawful evasion statutes, "while charged with or convicted of" a felony or misdemeanor, is different from and arguably narrower than the language of the escape statutes, "for" a felony or misdemeanor. However, we are not convinced that the legislature intended the different language to have any different meaning in this context. In particular, we note that the original unlawful evasion statutes had language identical to that of the corresponding escape statutes and that the subsequent divergence in language appears unintended to establish a difference in meaning.[5] We conclude that the unlawful evasion

---

**5.** The original unlawful evasion statute was passed in 1976. Former AS 11.30.093 (1976) provided as follows:

(a) A person commits an unlawful evasion if he wilfully fails to return to official detention, as defined in § 100 of this chapter, following temporary leave granted for a specific purpose or limited period including but not limited to privileges granted under AS 33.30.150, 33.30.-250, or 33.30.260.

(b) An offense charged under (a) of this section is punishable as an unlawful evasion in the first degree if *the official detention is on a charge of a felony.*

(c) An offense charged under (a) of this section is punished in the same manner as an escape in the first degree if the person during the time of unlawful evasion or at any time before his being restored to official detention has in his possession a deadly weapon.

(d) *Any other offense under this section is punishable as an unlawful evasion in the second degree.*

(Emphasis added.) Former AS 11.30.100(2) (1976) provided:

"official detention" means arrest, custody following surrender in lieu of arrest, detention in any facility for custody of persons *under*

*charge or conviction of crime or alleged to be delinquent,* detention for extradition or deportation *or any other detention for law-enforcement purposes;* but "official detention" does not include supervision on probation or parole, or constraint incidental to release on bail.

(Emphasis added.)

Under these original statutes, any evasion from official detention would be at least second-degree unlawful evasion under the catchall clause in former AS 11.30.093(d) without regard to "felony" or "misdemeanor" or "charge" or "conviction" requirements. Furthermore, the language of former AS 11.30.093(b) ("the official detention is on a charge of a felony") was identical to the language of former AS 11.30.090(b)(1) (the escape statute), and this court has ruled that the latter language was as broad as the current "for a felony" language of AS 11.56.310(a)(1)(B). *Stores,* 816 P.2d at 211 n. 4. The original unlawful evasion law therefore offers no support for LeFever's position that adjudicated juvenile delinquents could not commit that offense in any degree.

In 1978, the legislature repealed the above statutes and enacted new definitions of unlawful evasion and official detention. Former AS 11.-56.340(a) (1978) provided: "A person commits

statutes, AS 11.56.340 and AS 11.56.350, are together intended to cover all people who fail to return to official detention, and that the statutes' introductory language is intended simply to classify unlawful evasion by seriousness of the evader's original conduct, not to exclude adjudicated delinquents from the definition of unlawful evasion.[6]

We AFFIRM the conviction.

the crime of unlawful evasion in the first degree if he fails to return to *official detention on a charge of a felony* following temporary leave granted for a specific purpose or limited period, including privileges granted under AS 33.30.150, 33.30.250, or 33.30.260" (emphasis added). Former AS 11.56.350(a) (1978) was identical except that it replaced the words "first" and "felony" with "second" and "misdemeanor." It appears that the 1978 division of unlawful evasion into two statutes was not meant to exclude anything from the definition of the unlawful evasion offense but instead served the same purpose as the division in the 1976 statute: to classify all unlawful evasions in terms of degrees of appropriate punishment. *Cf. Stores*, 816 P.2d at 212 n. 5. Again, the 1978 unlawful evasion language "on a charge of a felony" was identical to the 1978 escape language.

In 1980, the language of the escape statutes was changed to read "for a felony" instead of "on a charge of a felony." This court in *Stores* held that this amendment was meant to clarify rather than change the scope of the escape offenses. *Id.* at 211 n. 4. The corresponding language of the unlawful evasion statutes was not changed at that time, nor was it changed in 1985 when the legislature made unrelated minor changes to the unlawful evasion statutes (replacing "he" with "the person" and adding "33.30.-288" to the list of statutory privileges). *See* former AS 11.56.340, .350 (1985). This divergence of the escape statutes' language from the unlawful evasion statutes' language appears insignificant, however, because the legislature stated and this court has held that the two phrases ("for a felony" and "on a charge of a felony") have the same meaning in this context.

Finally, in 1986, the legislature rewrote the unlawful evasion statutes into their current form. The reason for this revision seems clear. The earlier unlawful evasion statutes had referred to a number of prison statutes: former AS 33.30.-150, .250, .260, and .288. These were all repealed in 1986, when the legislature rewrote that chapter of the Alaska Statutes. *See* ch. 88 SLA 1986. It was necessary for the new unlawful

evasion statutes to refer to the new prison statutes. In order to accomplish this, the legislature for the first time split AS 11.56.340(a) into subsections:

> A person commits the crime of unlawful evasion in the first degree if, while charged with or convicted of a felony,
> (1) the person fails to return to official detention within the time authorized following temporary leave granted for a specific purpose or limited period, including leave granted under AS 33.30.181; or
> (2) while on furlough under AS 33.30.101–33.30.131 the person fails to return to the place of confinement or residence within the time authorized by those having direct supervision.

This change apparently recognizes that furloughs under AS 33.30.101–.131 do not necessarily involve "official detention" but may be furloughs from a "residence" rather than a "place of confinement." It was therefore no longer an option for the legislature to refer to unlawful evasion from "official detention on a charge of a felony" (or "for a felony"). Instead, in order to apply the introductory language of the unlawful evasion statutes to both new subsections, one of which did not necessarily involve official detention, the legislature had to expand the language into a full modifying clause: "while charged with or convicted of a felony" (or "misdemeanor"). The 1986 amendments, if anything, expanded the definition of unlawful evasion (by clarifying that evasion from furloughs not involving official detention was unlawful) rather than narrowed it.

6. We do not intend to imply that an adjudicated delinquent who evades official detention while still under the age of 18 would be convicted as an adult of unlawful evasion in any degree. Such a minor would, of course, be subject to the same juvenile proceedings (or possible waiver to adult proceedings) for the unlawful evasion as any minor who violates the criminal law of the state or a municipality.